IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH Y. WOOD,                )
                                )
        Plaintiff,              )
                                )
    v.                          )   Civil Action No. 07-0899
                                )
UNIVERSITY OF PITTSBURGH        )
and MICHAEL HRITZ               )
                                )
        Defendants.             )

MEMORANDUM and ORDER

Gary L. Lancaster,
Chief Judge.                          October 21 , 2009

        This is an action in employment discrimination under
Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2 and the
Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 952 et seq.,
and in civil rights under the Civil Rights Act, 42 U.S.C. § 1983.
Plaintiff, Deborah Wood, ("Wood" or "plaintiff") alleges that
defendants, University of Pittsburgh and Michael Hritz, her former
supervisor (collectively "Pitt" or "defendants") discriminated
against her by: 1) engaging in disparate treatment; 2) creating a
hostile work environment; and 3) retaliating against her for
engaging in protected conduct. Wood also alleges that defendants
deprived her of civil rights through a faulty internal
investigation of her alleged harassment. Plaintiff seeks statutory
relief and money damages.

        Defendants have filed a motion for summary judgment under
Federal Rule of Civil Procedure 56(c), arguing that there is no

genuine issue as to any material fact [Doc. No. 42]. Defendants also contend they had legitimate, non-discriminatory reasons for their employment decisions regarding plaintiff. For the reasons that follow, defendants' motion will be granted.

I.   <u>FACTUAL BACKGROUND</u>

Unless otherwise indicated, the following material facts are undisputed. We construe all other facts in the light most favorable to plaintiff, the non-moving party.

In 1999, Pitt hired Wood as a system analyst in its Computing Services and Systems Development department. In 2002, Wood voluntarily transferred to a better paying position with the Systems Section of the National Surgical Adjuvant Breast and Bowel Project ("NSABP") in Pitt's Department of Biostatistics. The NSABP received approximately 90% of its funding from the National Cancer Institute, which is part of the National Institute of Health.

The System Section where Wood worked managed all the computers used at the NSABP, including user work stations and servers. System Section employees were responsible for system development and maintenance, data storage, retrieval, archiving, systems security, and installation and inventory of hardware and commercial software. Wood was the only woman and the only African-American out of six people working in the department. She worked under the direction of defendant Hritz, head of the NSABP Computer

2

Systems Section. Hritz in turn reported to Dr. Joseph Costantino, director of the NSABP.

In 2006, Wood began complaining to Hritz that someone was tampering with her Pitt office and computer. Wood reported that, inter alia: 1) she found her office in disarray in the mornings; 2) someone remotely accessed her computer at night; 3) the number "6666666" appeared repeatedly on her office calculator; and 4) her coworkers treated her disrespectfully. This began after Wood started making suggestions for improving the functioning and performance of her department.

Hritz responded to Wood's complaints of harassment by installing a lock on Wood's office. He also investigated the complaints by purchasing a webcamera and software to monitor usage of her computer. Wood also received several new computers. Hritz installed programs on her computer to record all network traffic that came in or out of Wood's computer. At the end of his investigation, Hritz had found no improper tampering with Wood's computer. At that point, Wood filed a complaint with Pitt's Human Resources Department, which conducted an investigation. Wood proposed installing a personal firewall on her computer to prevent access, which Pitt denied.

In November of 2006, Wood contacted Pitt's campus police department. Dr. Constantino became involved and requested an independent investigation of Wood's allegations. Pitt's Computing

3

Services and Systems Development department and the campus police
both conducted investigations, which revealed no evidence that
Wood's systems were inappropriately accessed or that her coworkers'
computers were used in any wrongful activities. Pitt's internal
investigator spent more than 200 hours investigating Wood's
complaints.

II. Procedural History

Wood filed her first Equal Employment Opportunity
Commission ("EEOC") complaint on December 19, 2006.[1]  Wood alleged
discrimination on the basis of her sex only, with no mention of
discrimination based on race.  Defendants received notice of her
charge in early January of 2007.  On March 29, 2007, Wood obtained
a "right to sue" letter from the EEOC. On June 27, 2007, Wood filed
a complaint in this court. The next day, Pitt informed Wood that
her position, along with sixteen other positions in the NSABP
project, would be eliminated on July 12, 2007.  Pitt offered Wood
another position, which she declined because she felt unqualified
for the work.  Wood served Pitt with notice of her lawsuit on July
12, 2007.

On April 7, 2009, we granted in part and denied in part
Pitt's motion to dismiss.  The court granted Pitt's motion that to

---

[1]

It appears that Wood subsequently filed two other EEOC
charges; however, their status is unclear.

4

the extent that Wood asserted a Title VII claim against an individual, since individuals are not liable under that statute. The court also dismissed Wood's allegation that she was also discriminated against on account of her race because she failed to raise that claim before the EEOC. See O'Donnell v. Michael's Family Restaurant, Inc., No. 07-5386, 2008 WL 2655565, at *2 (E.D. Pa. July 1, 2008). ("A plaintiff must exhaust all administrative remedies before bringing a claim for judicial relief."). However, we denied Pitt's motion to dismiss Wood's section 1983 claim. Following discovery, Pitt filed this motion for summary judgment.

## II.  Standard of review

The court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" only if it might affect the outcome of the case under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Factual disputes concerning issues that are irrelevant to the outcome of the case are, therefore, not considered. Id. Factual disputes must also be "genuine" in that the evidence presented must be such "that a reasonable jury could return a verdict for the nonmoving party." Id.

5

A non-moving party may not successfully oppose a summary judgment motion by resting upon mere allegations or denials contained in the pleadings, or by simply reiterating those allegations or denials in an affidavit.  Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990).  Rather, the non-moving party must offer specific evidence found in the record that contradicts the evidence presented by the movant and indicates that there remain relevant factual disputes that must be resolved at trial.  See id. If the non-moving party does not respond in this manner, the court, when appropriate, shall grant summary judgment.   Fed. R. Civ. P. 56(e).

Because plaintiff bears the burden of persuasion in Title VII actions, a defendant is entitled to summary judgment if it can demonstrate that plaintiff could not carry the burden of proof at trial. Jalil v. Avdel Corp., 873 F.2d 701, 707 (3d Cir. 1989).  The defendant may demonstrate this in two ways: it may show that the plaintiff is unable to establish a    prima facie case of discrimination; or, if plaintiff has successfully established a prima facie case, the defendant may win summary judgment by showing that the plaintiff could not produce sufficient evidence of pretext to  rebut an assertion of nondiscriminatory reasons for the discharge.  Id. Summary judgment is inappropriate, however, if the plaintiff establishes a prima facie case and counters the defendant's proffered explanation with evidence raising a factual

6

issue regarding the employer's true motivation for discharge.   When
the defendant's intent has been called into question, the matter is
within the sole province of the fact finder.   Id.

        With these concepts in mind, the court turns to the
merits of defendants' motion.

## III. Discussion

        Wood first alleges that defendants violated Title VII and
the PHRA, through: 1) disparate treatment; 2) a hostile work
environment; and 3) retaliation for engaging in protected conduct.[2]
Title VII of the Civil Rights Act of 1964 and the PHRA make it
unlawful for an employer to "discriminate against any individual
with respect to his compensation, terms, conditions or privileges
of employment because of such individual's race, color, religion,
sex or national origin." 42 U.S.C. § 2000e-2(a)(1).   Title VII
"prohibits both intentional discrimination (known as 'disparate
treatment') as well as, in some cases, practices that are not
intended to discriminate but in fact have a disproportionately
adverse effect on minorities (known as 'disparate impact')." Ricci

---

[2]

Because the analysis required for adjudicating Wood's
Title VII and PHRA is identical, the court will consider
those two claims together.   See Goosby v. Johnson &
Johnson Medical, Inc., 228 F.3d 313, 317, n.3 (2000)
(stating that since the analysis required for
adjudicating a PHRA claim is identical to a Title VII
inquiry "we therefore do not need to separately address"
the PHRA claim).

v. DeStefano, 129 S.Ct. 2658, 2672 (2009).

The Supreme Court has set forth a burden-shifting scheme for discriminatory-treatment cases. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. Stewart v. Rutgers, 120 F.3d 426, 432 (3d Cir. 1997). If plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. McDonnell, 411 U.S. at 802. If the employer answers its relatively light burden by articulating a legitimate reason for the unfavorable employment decision, then the burden of production "rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion)." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994); see Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000).

Pitt is entitled to summary judgment if there remains no genuine issue of material fact at any level of this framework. Sherrod v. Philadelphia Gas Works, 209 F. Supp. 2d 443, 449 (E.D. Pa. 2002). The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

8

Wood also alleges that the defendants violated her Due Process and Equal Protection rights. See 42 U.S.C. § 1983. The McDonnell Douglas framework is applicable to this claim as well. See Stewart, 120 F.3d at 432 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 n.1 (1993)).

A.   Hostile work environment

Wood alleges that she was subject to a hostile work environment because of her gender.   Hostile work environment harassment occurs when "unwelcome sexual conduct unreasonably interferes with a person's performance or creates an intimidating, hostile, or offensive working environment."   Weston v. Pennsylvania, 251 F. 3d 420, 425-26 (3d Cir. 2001).   Title VII "does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] ... because of ... sex.'" Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998). Wood's claim "must be assessed with respect to the totality of the circumstances." Sherrod, 209 F. Supp. 2d at 451-52 (citing Harris v. Forklift Systems Inc., 510 U.S. 17 (1993)).   More specifically, the court must examine the "frequency of the alleged conduct, its severity, whether it was physically threatening or a mere offensive utterance, and whether it unreasonably interfered with the plaintiff's work performance." Id.

To establish a prima facie case for a sexually hostile

9

work environment under Title VII, an employee must show: "(1) the employee suffered intentional discrimination because of [her] sex, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected the [employee], (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position, and (5) the existence of respondeat superior liability." Andreoli v. Gates, 482 F.3d 641, 643 (3d Cir. 2007) (quoting Weston, 251 F.3d at 426).

Wood alleges that defendants created a hostile work environment by tampering with her office and her computer, treating her disrespectfully, and conducting a faulty investigation that failed to locate evidence of harassment. However, after reviewing the record, plaintiff fails the first prong of Andreoli because there is no evidence that she suffered intentional discrimination on the basis of her sex. Plaintiff argues that she "was the sole female and the only African-American employee in the Department of Biostatistics . . . gender and race discrimination is . . . demonstrated generally by that scenario." Plaintiff further argues that Pitt has "failed to offer any reason or excuse whatsoever for the invidious harassment and discrimination meted out to Ms. Wood, other than race and gender. In the absence of any other motivation or basis for the behavior, discriminatory animus is the only legitimate conclusion."

However, Wood fails to offer evidence adequately

10

particularizing these assertions.  To establish a prima facie case, the burden of proof is on the plaintiff to produce some evidence that she was discriminated against on the basis of her sex. Plaintiff admitted that she never heard anyone at work make a gender or sex-based comment.  When asked at her deposition what evidence she had to support her claims, she stated "I believe that by the way I was treated . . . nonverbally, they would make faces and . . . just treat me mean."  She also said that Hritz, her boss, treated her differently as well:

> Q. What did he do to lead you to believe that he was . . . hostile?
>
> A. [T]here were just times when he acted differently or had me doing different assignments from other people.
>
> Q. How did he act differently?
>
> A. He would just be distant.  Like, he was more distant than, you know, when I had first started working. . .
>
> Q. Anything else?
>
> A. No.

Even if Wood had established a prima facie case, Pitt has rebutted it with legitimate, nondiscriminatory reasons for its actions.  In response to Wood's claim of computer tampering during after work hours, Pitt introduced evidence demonstrating that computers routinely remotely access other computers on the network at night as part of normal system functions.  Pitt also produced evidence of the extensive investigation it undertook to locate the

11

cause of the alleged computer tampering. Wood's response is that those investigations were "faulty" and "haphazard" and that the Pitt should have retained the hard drives on Wood's computer instead of disposing of them. Wood maintains that without the hard drives, it cannot prove that she was harassed. However, even if Wood could establish that Pitt's investigation was faulty and that Pitt should have retained the hard drives, Wood has produced absolutely no evidence beyond her affidavit and self-serving testimony that the motivating factor behind the alleged faulty investigation was Wood's gender.[3]

In conclusion, there is no evidence that the harassment Wood alleges was based upon her sex, and she offers nothing to show that Pitt's explanation for the alleged harassment is pretextual. At best, Wood has alleged that she did not have an amicable relationship with her coworkers. However, Title VII does not set forth "a general civility code for the American workplace." Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). Because plaintiff fails to produce evidence that the alleged harassment was based upon her gender, summary judgment on

---

[3]

> Wood proffers the testimony of Tyrone Smith, a purported expert in forensic computer investigations, who would testify that Pitt's investigation was not up to industry standards. Even if that were the case, Smith's testimony would be irrelevant because it would not establish that Pitt's supposed faulty investigation was motivated by gender animus. As a result, a Daubert hearing on Smith's viability as an expert witness is unnecessary.

12

is appropriate.  <u>Jalil</u>, 873 F.2d at 707.

B.  <u>Retaliation</u>

Wood's next contention is that Pitt improperly retaliated against her by: 1) failing to fully and properly investigate her complaints of harassment; 2) reducing her workload; 3) treating her disrespectfully; and 4) firing her after she filed this lawsuit and her EEOC charges.

The anti-retaliation provision of Title VII seeks to prevent employer interference with "unfettered access" to the statue's remedial mechanisms.  <u>Burlington Northern and Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006) (quoting <u>Robinson v. Shell Oil Co.</u>, 519 U.S. 337, 346 (1997)).  It does so by prohibiting employer actions that are likely "to deter victims of discrimination from complaining to the EEOC," the courts, and their employers.  <u>Id.</u>  In order to establish a <u>prima</u> <u>facie</u> case of discriminatory retaliation, plaintiff must show: 1) she engaged in protected activity; 2) the employer took an adverse employment action against her; and 3) there was a causal link between her protected activity and the employer's adverse action.  <u>Kachmar v. SunGard Data Sys., Inc.</u>, 109 F.3d 173, 177 (3d Cir. 1997).

As for the first prong, it is undisputed that Wood engaged in protected activity, i.e., filing complaints with Pitt, the EEOC, and this court.  The next question is whether any of the

13

alleged acts by defendants - failing to properly investigate Wood's complaints, reducing her workload, treating her disrespectfully, and firing her - constituted an adverse employment action. An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998). Such an action "in most cases inflicts direct economic harm and requires an official act taken by a supervisor within the company who has the power to make economic decisions affecting employees under his or her control." Id. A plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington Northern, 548 U.S. at 68 (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. 2006)). Furthermore, "[e]mployers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." Clark County School Dist. v. Breeden, 532 U.S. 268, 272 (2001). We address each alleged action in turn.

1. Disrespect from coworkers and Pitt's failure to investigate

Wood first alleges that Pitt retaliated against her by failing to properly investigate her complaints of that harassment. However, Wood presents no evidence that the alleged failure to properly investigate resulted in any direct economic harm or interfered with Wood's "unfettered access" to Title VII's remedial mechanisms.[4]   Burlington Northern, 548 U.S. at 68.   Wood also alleges that her coworkers disagreed with her at meetings: "[I]f I made a comment, it was categorically denied that that was the problem with a particular system . . . there were times when I would speak to coworkers and they wouldn't speak back.   Things like that.   Just make - indirectly, you know, make faces and things like that."   However, these "petty slights, minor annoyances, and simple lack of good manners" do not, as a matter of law, deter employees from complaining to the EEOC. Id.

2. Workload reduction

Wood next asserts that Pitt systematically reduced her workload by taking away duties such as administering the project server and installing servers.   Pitt counters with evidence that it decided to switch to a new server and that Hritz offered Wood the

---

[4]

Wood instead argues that the defendants' faulty investigation violated her equal protection and due process rights by depriving her of evidence of the harassment. See Part D. Section 1983 claims.

15

chance to work on the new project. Wood declined because she felt she was not qualified for the job. However, Wood admitted that Hritz later restored her original duties to her, and that she was able to complete all her new work assignments. As a result, there is no evidence that Hritz actually reduced her project responsibilities. There is also no evidence that Wood's alleged workload reduction resulted in a corresponding reduction in pay or other economic harm. In fact, Wood routinely received pay raises, and never received a bad performance review, a written warning, or a reprimand.

### 3. Retaliatory firing

Finally, Wood alleges that Pitt fired her because she filed internal complaints, EEOC complaints, and this lawsuit. We believe plaintiff has succeeded in establishing all three elements of a retaliatory discharge. Wood unquestionably engaged in a protected activity when she filed internal complaints in 2006 and her first discrimination claim with the EEOC in December 2007, which Pitt learned in January of 2007. She was fired approximately six weeks after receiving a right to sue letter from the EEOC on May 27, 2007. Although close, we believe this sufficient to establish a causal link between the two circumstances. See Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989)(citing Burrus v. United Tele. Co., 683 F.2d 339, 343 (10th Cir.) ("The causal

16

connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.")). Accordingly, we find that Wood has established a prima facie case of retaliatory discharge for filing charges with the EEOC.[5]

However, Pitt has rebutted with legitimate, non-discriminatory reasons for its decision to fire Wood. In early 2007, Pitt learned that the National Cancer Institute planned to reduce its funding to the department where Wood worked by approximately $2,000,000. As a result, Pitt identified Wood's position, along with sixteen others, for elimination. There is no evidence that Pitt retained any position with less seniority than Wood. Pitt also offered Wood and another employee from her department the opportunity to work for a different section of the department. Wood declined, saying that she did not feel qualified for the new position. However, the other employee accepted the job, and Wood does not dispute that she declined the position.

Wood has presented no evidence showing that the decision to eliminate her position was connected to the EEOC complaints that

---

[5]

> Wood, however, does not establish a prima facie case that she was fired in retaliation for filing this lawsuit because there is no evidence of a causal connection between the two actions. Although Wood filed this lawsuit on June 28, 2007, one day before the layoffs were announced, she did not serve Pitt until July 12, 2007. In other words, there is no evidence that Pitt had knowledge of this lawsuit when it made the decision to eliminate her position.

17

she filed, as demonstrated by her deposition testimony:

> Question: What do you believe is the reason Pitt discharged you?
>
> Answer: Because I filed internal and external complaints.
>
> Q: On what do you base this belief?
>
> A: That's how I believe; that's what I believe.
>
> Q: Do you have any other evidence?
>
> A: No.

Furthermore, Wood knew, or should have known, that her continued employment was dependent upon renewed funding for her position, as demonstrated by a letter sent from Pitt to Wood confirming her hiring, which states "[a]lso note that this position is funded by non-University funds and the continuation of this position is contingent upon the renewal of those funds."

In conclusion, Wood has established a _prima facie_ claim of retaliation. However, Pitt has rebutted with evidence of legitimate, non-discriminatory reasons for its actions, and Wood offers no evidence that Pitt's motives were pretextual.

C. _Disparate Treatment_

Wood next alleges that she was discriminated against on the basis of her gender. Under _McDonnell Douglas_, an employee seeking to establish a gender discrimination claim has the initial burden of establishing a _prima facie_ case by showing that: (1) she

is a member of a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class received more favorable treatment. Horton v. Nicholson, 435 F. Supp. 2d 429, 434 (E.D. Pa. 2006).[6]

It is undisputed that Wood is a member of a protected class and that she performed her job satisfactorily. Wood alleges that she suffered several adverse employment actions - reduction in responsibilities, computer harassment, disrespectful behavior from other employees and her supervisor, failure on the part of Pitt to find evidence of harassment, and termination of her employment with Pitt. However, as already discussed, these incidents either: 1) do not amount to adverse employment actions; or 2) Pitt has established legitimate, non-discriminatory reasons for those actions. Furthermore, apart from her affidavit and self-serving statements, Wood has presented no evidence that similarly situated employees were treated differently than she.

In conclusion, Wood's bald assertions that she was treated differently and fired on account of her gender are insufficient to survive summary judgment. See Hicks v. Arthur, 878

---

[6]

> As noted, the court dismissed Wood's allegation that she was discriminated against on account of her race because she failed to raise that claim before the EEOC. Even if Wood had raised racial discrimination in her EEOC charge, summary judgment would still be appropriate because there is no evidence that racial animus motivated Pitt's alleged misconduct.

F. Supp. 737, 740 (E.D. Pa. 1995) (granting summary judgment for defendants on plaintiff's disparate treatment claim were plaintiff merely relied on allegations in her deposition and failed to present any evidence as to disparate treatment).

D.   Section 1983 Claims

        Finally, Wood alleges that defendants violated her constitutional rights under the Equal Protection and Due Process clauses by failing to properly investigate her claims of computer tampering.  According to Wood, "the fact that Pitt proceeded in this manner [by allegedly conducting a faulty investigation] rather than calling in an outside Forensic Investigation from the beginning . . . violated my civil rights . . . I can think of no reason for this behavior except that I am African American and a female."  In essence, Wood argues that Pitt violated her civil rights by conducting a faulty investigation that found no evidence of harassment.

        With regard to Wood's equal protection claim, this jurisdiction applies the same legal analysis to discrimination claims brought under Title VII and equal protection claims brought under section 1983.  See King v. City of New Kensington, No. 06-1015, 2008 WL 4492503, at *17 (W.D. Pa. Sept. 30, 2008) (explaining that "[t]he analysis with respect to gender discrimination under Title VII ... is dispositive of plaintiff's

gender-based discrimination claim under Section 1983");
Hoechstetter v. City of Pittsburgh, 248 F. Supp. 2d 407, 409 n.1,
412 n.4 (W.D. Pa. 2003) (collectively analyzing Title VII and
section 1983 discrimination claims). Because section 1983
discrimination claims have a more stringent "intent" requirement
that Title VII claims, "the failure to meet the prima facie case
under Title VII is fatal to a section 1983 claim." Maull v. Div.
of State Police, 141 F. Supp. 2d 463, 478 n.6 (D. Del. 2001).
Since Wood has failed to make a prima facie case under Title VII,
this claim must necessarily fail.

Wood also contends that Pitt violated the Due Process
Clause of the Fourteenth Amendment. When a plaintiff claims such
a violation, the court must "ask whether the asserted individual
interests are encompassed within the Fourteenth Amendment's
protection of life, liberty, or property; if protected interests
are implicated, then we must decide what procedures constitute due
process of law." Unger v. Nat'l Residents Matching Program, 928 F.
2d 1392, 1395 (3d Cir. 1991).

Here, Wood has not alleged that Pitt has violated any
specific life, liberty, or property interest. Wood had no
constitutionally protected property interest in her at-will job.
See Sanguigni v. Pittsburgh Bd. Of Pub. Educ., 968 F.2d 393, 401
(3d Cir. 1992) ("A property interest in state employment exists
where an employee has a legitimate claim of entitlement to such

21

employment under state law, policy, or custom. An employee, however, must have more than an abstract type of unilateral expectation."). Furthermore, Wood's assertion that Pitt should have investigated her claims more thoroughly does not implicate a life, liberty or property interest. As a result, this claim must also fail.

IV. Conclusion

For the foregoing reasons, summary judgment will be entered in defendants' favor. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH Y. WOOD,                    )
                                    )
          Plaintiff,                )
                                    )
     v.                             )    Civil Action No. 07-899
                                    )
UNIVERSITY OF PITTSBURGH            )
and MICHAEL HRITZ                   )
                                    )
          Defendants.               )


                         ORDER

     AND NOW, this 21st day of October, 2009, it is hereby ORDERED,

ADJUDGED and DECREED THAT defendants' motion for summary judgment

[Doc. No. 42] is GRANTED.  The Clerk of Court is directed to mark

this matter CLOSED.

                         BY THE COURT:

                         Gary L. Lancaster
                         Chief Judge,
                         United States District Court

cc:  All Counsel of Record